UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIELLE BAUGHMAN,<br><br>            Plaintiff,<br><br>    v.<br><br>MARATHON PETROLEUM LOGISTICS SERVICES, LLC and MARATHON PETROLEUM CORPORATION,<br><br>            Defendants. | CIVIL ACTION NO. 4:24-CV-00287<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendants Marathon Petroleum Logistics Services, LLC and Marathon Petroleum Corporation ("Defendants"). (Doc. 16). On December 18, 2023, Plaintiff Danielle Baughman ("Baughman") commenced this action against Defendants by filing a complaint on February 16, 2024. (Doc. 1). Baughman filed the operative amended complaint on July 3, 2024, asserting claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq. ("PHRA"), and the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"). (Doc. 15). On July 17, 2024, Defendants filed a motion to dismiss on the grounds of improper venue and failure to state a claim upon which relief can be granted. (Doc. 16). For the reasons provided herein, Defendants' motion is **DENIED**. (Doc. 16).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

This employment discrimination case arises from alleged sex discrimination suffered by Baughman at the hand of her supervisor Steven Smith ("Smith") and other male colleagues

while employed by Defendants. (Doc. 15). Baughman alleges that Smith required Baughman to work on the floor without a workstation; that Smith and other male supervisors made sex-based discriminatory comments to Baughman, including criticizing her looks when she challenged male colleagues; and that Smith removed Baughman from tasks at which she was contributing at a "high level" only to be replaced by lower-level male employees to whom she was required to offer assistance if needed. (Doc. 15, ¶¶ 26-67). According to Baughman, the poor treatment she received was not directed towards male coworkers. (Doc. 15, ¶¶ 35-50).

Baughman further alleges that as a result of the discrimination she was experiencing at work, she began to experience anxiety and depression which required her to take medical leave in July 2021 and led her to file her first discrimination complaint with the Pennsylvania Human Relations Commission ("PHRC") on September 14, 2021. (Doc. 15, ¶¶ 56-57). When Baughman returned to work on October 13, 2021, Defendants had not taken any remedial or discriminatory action regarding Baughman's complaints. (Doc. 15, ¶ 58). Instead, Defendants placed Baughman in a position which was not comparable to her position prior to her complaints and for which she received no training, were outside the scope of her responsibilities, and were vague and came with unreasonable short deadlines such that "difficult for her to complete the tasks." (Doc. 15, ¶¶ 58-67).

As a result of the ongoing discriminatory environment, Baughman filed a second PHRC complaint on or about January 10, 2022, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC") and went on another approved medical leave in April 2022. (Doc. 1, ¶¶ 18, 68). In June 2022, Baughman communicated with Defendants about returning to work and was told she would be supervised by the same male supervisors who she alleged had been discriminatory towards her. (Doc. 15, ¶¶ 69-71).

Baughman contends that she requested to extend her leave "consistent with her doctor's medical advice" due to the stress she experienced as a result of the discrimination and the failure of Defendants to take any remedial actions. (Doc. 15, ¶¶ 72-74). Baughman alleges that she "repeatedly asked Defendants for assistance with the discriminatory and retaliatory environment to which she was being subjected" but that "Defendants did not respond to Plaintiff's questions or dispute that she would still be required to report to male managers about whom she had complained." (Doc. 15, ¶¶ 72-74). Defendants terminated Baughman's employment on September 16, 2022. (Doc. 15, ¶ 75). Baughman also submits that Defendants created and allowed to continue a hostile work environment by failing to assist Baughman in remediating the situation. (Doc. 17, ¶¶ 39-48).

In her amended complaint, Baughman asserts claims under Title VII, the PHRA, and the FMLA. (Doc. 15). On July 17, 2024, Defendants filed a motion to dismiss along with a brief in support. (Doc. 16; Doc. 17). Baughman filed a brief in opposition to Defendants' motion to dismiss on July 31, 2024. (Doc. 19). Defendants filed a reply brief on August 14, 2024. (Doc. 21). Accordingly, the motion has been fully briefed and is ripe for discussion. (Doc. 16; Doc. 17; Doc. 19; Doc. 21).

II. **LEGAL STANDARDS**

    A. 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE

Venue is generally governed by 28 U.S.C. § 1391. *See In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295-96 (3d Cir.2004). "However, if a statute contains a specific venue provision, that statute governs and § 1391 is displaced." *Soul v. Movado Retail Grp., Inc.*, No. CIV. 1:06CV2115, 2007 WL 1119296, at *2 (M.D. Pa. Apr. 10, 2007) (citing 28 U.S.C. § 1391). In such cases, a party may move to dismiss pursuant to the Federal Rule of Civil

Procedure 12(b)(3) if venue is improper or inconvenient based upon a statutory venue provision. Fed. R. Civ. P. 12(b)(3).

Title VII is one such statute that contains a venue provision. *See* 42 U.S.C. § 2000e-5(f)(3). For the purposes of a Title VII claim, venue is proper:

> "in [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

§ 2000e-5(f)(3)

"This scheme represents Congress's intent to limit venue in Title VII cases to the jurisdiction in which the alleged discrimination occurred." *Soul*, 2007 WL 1119296, at *2 (citing *Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969)).

B. <u>12(B)(6) MOTION TO DISMISS</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

4

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).

The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

**III.   DISCUSSION**

    A.   VENUE IS PROPER IN THIS DISTRICT

Defendants move to dismiss this case for improper venue. (Doc. 16; Doc. 17). Defendants argue that "because Pittsburgh, Pennsylvania is where Plaintiff lived, worked and where the alleged wrongful employment actions necessarily occurred, venue [. . .] is clearly not proper in the Middle District of Pennsylvania." (Doc. 17, at 9). Baughman responds that according to the Title VII venue provision, venue is proper in *any district* in the *state* in which the alleged acts occurred. (Doc. 19, at 9-10).

To reiterate, Title VII requires that claims be brought in a district in the state in which any alleged violation occurred. *See* § 2000e-5(f)(3). Here, Baughman alleges that "[a]t all times material … [Plaintiff] worked out of her home in Pittsburgh, PA." (Doc. 15, ¶ 18; Doc. 1-1, at 3). All her allegations pertain to discrimination she faced while working in her role, out of her home in Pittsburgh. (Doc. 15; Doc. 1-1). Thus, the Middle District of Pennsylvania is proper as a district within the state where the alleged unlawful conduct occurred. *See* § 2000e-5(f)(3); *Albright v. W.L. Gore & Assocs., Inc.*, No. 02-304-GMS, 2002 WL 1765340 (D. Del. July 31, 2002). Accordingly, Defendants' motion to dismiss on the basis of improper venue will be **DENIED**. (Doc. 16).

B.  BAUGHMAN'S TITLE VII AND PHRA CLAIMS ARE SUFFICIENT

Baughman brings claims in Count I pursuant to Title VII, which the Court will analyze contemporaneously with her PHRA claims in Count III.[1] Title VII prohibits discrimination in employment based on, among other things, race, gender, and sex. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a)). To survive a motion to dismiss on a Title VII claim, the plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016). Specific legal theories and "detailed pleading is not generally required" but the plausibility standard requires that pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678).

Defendants moves to dismiss Baughman's Title VII and PHRA claims because they argue that the Amended Complaint is "devoid of any allegations identifying a specific adverse employment action allegedly taken by Defendants against Plaintiff because of Plaintiff's sex or any complaints of sex discrimination." (Doc. 17, at 10). Defendants further assert that "allegations identifying which action(s) Plaintiff is challenging for purposes of her Title VII

---

[1] The same legal standards that apply to Baughman's Title VII claims apply to her PHRA claims, and thus, the Court applies its analysis of the federal claims equally to the claims brought under Pennsylvania law. *Irwin*, 2021 WL 5756386, at *3; *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably.") *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 (2006).

and PHRA claims, it is impossible to understand the nature of Plaintiff's claims, or the timeliness or untimeliness of those claims." (Doc. 17, at 11). Specifically, Defendants contend that many incidents alleged by Baughman are time-barred because the continuing violation theory does not apply in these circumstances. (Doc. 17, at 12-14). Baughman responds that she "has set forth her allegations with specific timing of the incidences about which she is complaining" sufficient to state claims for a hostile work environment, sex discrimination, and retaliation. (Doc. 19, at 14). She further submits that Defendants' alleged acts "form a continuous pattern of related conduct," that satisfies the continuing violation doctrine. (Doc. 19, at 18-19).

   1. Sex Discrimination

To establish a *prima facie* case for discrimination under Title VII, Baughman must sufficiently allege "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (formatting modified). A plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Connelly*, 809 F.3d at 791. "[D]etailed pleading is not generally required" but the plausibility standard requires that pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678); *Thomas v. Univ. of Pittsburgh*, Civil Action No. 13-514, 2014 WL 3055361 at *5 (W.D. Pa. July 3, 2014) (plaintiff, a female student-athlete suspended after being charged with a crime, stated a plausible Title VII claim where her complaint referenced

four men specific instances where the defendant did not suspend male student-athletes who were charged with crimes).

Baughman satisfies the first prong by alleging that she is a female, and therefore, a member of a protected class. (Doc. 15, ¶ 2); *McClain v. Connellsville Sch. Dist.*, No. 2:20-CV-01485-CCW, 2021 WL 1737465, at *5 (W.D. Pa. May 3, 2021). Baughman has also satisfied the second prong that she was qualified for her position by claiming that she performed excellently and completed substantial and high-level work. (Doc. 15, ¶¶ 22-23, 38). Baughman has met the third and fourth prongs by alleging that she was treated more poorly than male employees by Smith and other male colleagues and later, that she was terminated from employment. (Doc. 15, ¶¶ 35-49). Baughman specifically alleges that she was not considered for certain roles or tasks without reason, when other lower-level male employees were considered; that she was excluded from meetings when other male employees were not; that she was told she had to work on the plant floor, when other male employees were not; that "male managers criticized Plaintiff's tone and her looks in meetings, especially when Plaintiff offered her recommendations or opinions, or challenged the opinions or recommendations of her male colleagues and supervisors"; and that she was generally unfairly criticized and spoken to in a patronizing and condescending manner. and later that she was terminated from employment. (Doc. 15, ¶¶ 35-49); *McClain,* 2021 WL 1737465, at *5 ("In the context of Title VII actions, the Third Circuit has defined 'adverse employment action' as 'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'") (citing *Tucker v. Merck & Co.*, 131 F. App'x 852, 855 (3d Cir. 2005)) (quoting *Storey v. Burns Int' Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)

(internal quotation omitted)). Accordingly, Defendants' motion to dismiss Baughman's Title VII discrimination claim is **DENIED**. (Doc. 16).

### 2. Hostile Work Environment

Title VII prohibits sexual harassment or sex discrimination that is sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive working environment. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). To state a claim based upon a hostile work environment theory, Baughman must allege that "1) [she] suffered intentional discrimination because of his/her [gender or sex], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected [her], 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Ally v. Chipotle Mexican Grill*, No. 1:18-CV-02342, 2020 WL 7775455, at *4 (M.D. Pa. Dec. 2, 2020), *report and recommendation adopted*, No. 1:18-CV-2342, 2020 WL 7773757 (M.D. Pa. Dec. 30, 2020). The first four elements establish a hostile work environment, and the fifth element determines employer liability. *Mandel*, 706 F.3d at 167.

In analyzing the severity or pervasiveness of a plaintiff's claims, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d 157 at 167 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The Court may not "parse[ ] out each event and view[ ] them separately, rather than as a whole." *Mandel*, 706 F.3d 157 at 168.

In *Harris v. City of Forklift Systems Inc.*, the Supreme Court held that whether a work environment is "hostile" or "abusive" in violation of Title VII can be determined only by looking at all circumstances, which may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely offensive, and whether it unreasonably interferes with employee's work. 510 U.S. at 23. As discussed *supra*, the Court finds that the incident described in the amended complaint rises to the level of severity necessary to hold Defendants liable under Title VII. (Doc. 15). Similar to the circumstances in *Harris*, the conduct at issue was repetitive and occurred on-site. (Doc. 15). Further, the general discrimination provision of Title VII provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Irwin v. Fry Commc'ns, Inc.*, No. 1:21-CV-00186, 2021 WL 5756386, at *3 (M.D. Pa. Aug. 17, 2021), *report and recommendation adopted*, No. 1:21-CV-00186, 2021 WL 5757335 (M.D. Pa. Sept. 11, 2021). To adequately plead a claim for sex discrimination under Title VII, Baughman must allege facts indicating that her status as a woman was either a "motivating" or "determinative" factor in Century's adverse employment action against her. *Irwin*, 2021 WL 5756386, at *4.

In her amended complaint, Baughman makes allegations of discriminatory conduct that occurred on-site and repeatedly over the course of several years, and further avers that after filing a PHRC complaint, she was given unreasonable assignments and stripped of independence by Smith requiring her to copy him on every email she sent. (Doc. 15, ¶¶ 26-67). She avers that several colleagues, not just one, engaged in discriminating against her by

11

repeatedly removing her from projects where she had excelled in favor of lower-level male employees, speaking to her in a patronizing tone, and criticizing her looks. (Doc. 15, ¶¶ 31-52). These allegations amount to a hostile work environment. *See Harris*, 510 U.S. at 23.

Next, the Court must determine if employer liability is appropriate here. "[A]n employer is vicariously liable to a victimized employee 'for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.'" *Hitchens v. Montgomery Cnty.*, 278 F. App'x 233, 235-36 (3d Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). For an employer to be automatically liable for a supervisor's conduct, the supervisor must have taken some "tangible employment action" against the employee, which includes, "discharge, demotion, or undesirable reassignment." *Hitchens*, 278 F. App'x at 236 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

The parties do not dispute that Smith was acting as Baughman's supervisor at the time of the alleged discrimination. (Doc. 15, ¶ 25; Doc. 17). Further, Baughman has properly alleged that Smith repeatedly removed her from assignments in favor of lower-level male employees and that after complaining about the discrimination, Smith assigned Baughman undesirable and unreasonable work assignments. (Doc. 15, ¶¶ 36-67). Thus, the Court finds that Baughman's hostile work environment claims are sufficient at this stage in the litigation. Defendants' motion to dismiss hostile work environment claims is **DENIED**. (Doc. 16).

### 3. Retaliation

A cause of action for retaliation under Title VII requires Baughman to show: "1) she engaged in activity protected by Title VII; 2) the employer took an adverse employment action against her; and 3) there was a causal connection between her participation in the protected

activity and the adverse employment action." *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995) (formatting modified). "A retaliatory action is considered to be 'materially adverse' to an employee if it might have dissuaded an objectively reasonable employee from engaging in statutorily-protected conduct." *Mitchell v. Miller*, 884 F. Supp. 2d 334, 378 (W.D. Pa. 2012) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67–71 (2006)).

Baughman's filing of her administrative PHRC complaint undoubtedly constitutes protected activity. (Doc. 17, ¶ 11); *see Stevens v. City of Philadelphia*, No. CV 17-4853, 2018 WL 3328057, at *2 (E.D. Pa. July 6, 2018) (recognizing filing an administrative complaint to be protected activity); *see also Brown v. Pennsylvania*, No. 1:14-CV-00201, 2017 WL 762009, at *4 (M.D. Pa. Jan. 30, 2017), *report and recommendation adopted*, No. 1:14-CV-201, 2017 WL 748934 (M.D. Pa. Feb. 27, 2017) ("it is well settled that [Plaintiff's] allegation of sexual harassment and subsequent filing of an EEO charge constitutes protected activity under Title VII"). However, "protected ... activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Accordingly, Baughman's verbal complaints to Smith about workplace sex discrimination also constitute protected activities. (Doc. 15, ¶ 50); *see Daniels*, 776 F.3d at 193.

As a result of Baughman's first administrative complaint and verbal reports about discriminatory actions, Baughman began experiencing anxiety and depression which led to an initial approved medical leave in October 2021. (Doc. 15, ¶ 59). Upon return to work,

Baughman alleges that the discriminatory environment had not been addressed and that Smith began assigning "her tasks that she was not trained to handle and for which he did not offer her training" and tasks "that were outside the scope of her job description and job responsibilities and which put her in the position of not being able to complete her current responsibilities," leading to further "anxiety and depression resulting from Defendants' discriminatory and retaliatory conduct." (Doc. 15, ¶¶ 64-69). Thus, Baughman was approved for a second medical leave beginning in April 2022. (Doc. 15, ¶ 68). In June 2022, Baughman avers that she was told that upon returning to work she would be required to report to the same male supervisors about whom she had complained of discrimination and retaliation. (Doc. 15, ¶¶ 69-71). Baughman contends that she requested to extend her leave "consistent with her doctor's medical advice" due to the stress associated with the events that had taken place and the requirement to continue reporting to male supervisors about whom she had complained of discriminatory conduct. (Doc. 15, ¶¶ 72-74). Baughman alleges that she "repeatedly asked Defendants for assistance with the discriminatory and retaliatory environment to which she was being subjected" but that "Defendants did not respond to Plaintiff's questions or dispute that she would still be required to report to male managers about whom she had complained." (Doc. 15, ¶¶ 72-74). Defendants terminated Baughman's employment on September 16, 2022. (Doc. 15, ¶ 75).

Baughman's reassignment to undesirable work tasks and later, her denial of an extension of her leave and subsequent termination amounts to materially adverse consequences that would dissuade a reasonable worker from engaging in protected activities. (Doc. 15, ¶¶ 50-75); see *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (finding a constructive discharge to be a materially adverse action for the purpose of a

Title VII retaliation claim); *see also Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 664 (E.D. Pa. 2020) (finding "general antagonism" and failure to investigate sex-based harassment claims are sufficient adverse actions in the context of a retaliation claim); *see also O'Day v. Wilkes-Barre Area Sch. Dist.*, No. 3:22-CV-00921, 2023 WL 4306749, at *4-5 (M.D. Pa. June 30, 2023) (stating discharge is an adverse action for the purpose of a retaliation claim).

### 4. Continuing Violation Doctrine

Finally, the parties dispute whether some of Baughman's allegations are untimely, due to the inapplicability of the continuing violation doctrine. (Doc. 17, at 11-14; Doc. 19, at 15-19). The continuing violations doctrine is "an equitable exception to the timely filing requirement which applies when a defendant's conduct is part of a continuing practice and is more than the occurrence of isolated or sporadic acts." *Ozoroski v. Maue*, 460 Fed.Appx. 94, 97 (3d Cir. 2012) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal quotations omitted). "Under this doctrine, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Ozoroski*, 460 Fed.Appx. at 97 (quoting *Cowell*, 263 F.3d at 292) (internal quotations omitted)). The Third Circuit established that at least three factors must be considered before rendering an action timely under the continuing violations doctrine, namely the:

> (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

> *Cowell*, 263 F.3d at 292 (citing *West v. Phila. Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)).

15

"However, discrete discriminatory acts are not actionable it they are time-barred—i.e., if they occurred more than 300 days before the plaintiff files her charge of discrimination; this is so even if those discrete acts are related to other discriminatory acts that are timely alleged in the charge." *Mudie v. Philadelphia Coll. of Osteopathic Med.*, 577 F. Supp. 3d 375, 386 (E.D. Pa. 2021) (citing *McRoy v. Mercer Cnty. Bd. of Social Servs.,* Civil Action No. 11-0202 (PGS)(TJB), 2014 WL 2094110, at *8 (D.N.J. May 20, 2014)).

The Third Circuit has similarly provided that in the context of Title VII claims, "[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and, similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario," *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990). The Court reads Baughman's allegations of discriminatory conduct over a substantial period of time in their entirety, within the context of the totality of the circumstances and finds that her allegations of discrimination related to her removal from desirable work tasks amount to "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). Such aggregated acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor*, 440 F.3d at 127.

It is worth noting that some of Baughman's allegations, namely the failure to promote allegations, are considered discrete acts that cannot support a lawsuit, as Defendants' failure to promote Baughman did not occur within 300 days of the majority of the conduct she complains of. (Doc. 15, ¶¶ 28-32); *see Mudie*, 577 F. Supp. 3d at 386 ("Discrete discriminatory acts include termination, failure to promote, denial of transfer, [and] refusal to hire") (citing

16

*Mandel*, 706 F.3d at 165) (citing *O'Connor*, 440 F.3d at 127) (citing *McRoy*, 2014 WL 2094110, at *8). However, this Court need only point to one act that occurred within the statutorily required timeframe, and Baughman's termination did occur during this time period. *See Mudie*, 577 F. Supp. 3d at 386 ("Next, the Court considers whether there is any one act that occurred within the statutorily required timed period. There is. The parties do not dispute that Mudie was terminated on January 2, 2021—which falls within the 300-day period. This is sufficient at this stage of the litigation for us to apply the continuing violation doctrine to related, non-discrete discriminatory acts that would otherwise be time-barred."). As such, "[t]his is sufficient at this stage of the litigation for us to apply the continuing violation doctrine to related, non-discrete discriminatory acts that would otherwise be time-barred." *Mudie*, 577 F. Supp. 3d at 388 (citing *Napier*, 833 F. Supp. 2d at 427 ("Here, the parties do not dispute that plaintiff's constructive discharge occurred within the statutorily required time periods. As such, the court will allow Plaintiff to submit evidence under the 'continuing violation' doctrine, regarding earlier alleged acts of discrimination which may otherwise be time-barred.")). Accordingly, Defendants' motion to dismiss based upon the continuing violation doctrine is **DENIED**. (Doc. 16).

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **DENIED**. (Doc. 16). An appropriate Order follows.

**Dated: February 13, 2025**

BY THE COURT:

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**